# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **BANCO POPULAR DE PUERTO RICO,**<br><br>Appellant,<br><br>v.<br><br>**PUERTO RICO TOURISM DEVELOPMENT FUND,**<br><br>Appellee. | **CIVIL NO. 20-1410 (PAD)** |

## MEMORANDUM AND ORDER

Delgado-Hernández, District Judge.

Banco Popular de Puerto Rico, in its capacity as the Indentured Trustee of the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA") Tourism Revenue Refunding Bonds, 2011 Series A (Trump International Golf Club Puerto Rico Project) ("Banco Popular" or "Trustee"), appeals from the bankruptcy court's orders granting appellee, the Puerto Rico Tourism Development Fund ("TDF"), administrative expenses under Section 503(b)(1)(A) of the Bankruptcy Code, 11 U.S.C.A § 503(b)(1)(A), and denying its motion for reconsideration of that order. For the reasons that follow, the bankruptcy court's orders are AFFIRMED.

## I. STANDARD OF REVIEW[1]

The bankruptcy court's conclusions of law are reviewed *de novo* and its findings of fact for clear error. See, In re Schatz, 602 B.R. 411, 421 (B.A.P. 1st Cir. 2019)(so stating); In re A&J Auto Sales, Inc., 223 B.R. 839 (D.N.H. 1998)(same); Robb v. Schindler, 142 B.R. 589, 590 (D.Mass.1992)(in a bankruptcy appeal, the reviewing court applies a *de novo* standard of review to conclusions of law by the bankruptcy court). However, in reviewing the bankruptcy court's order denying a motion for reconsideration, a district court may reverse that order only for a "manifest abuse of discretion." López, 629 B.R. 322, 327 (B.A.P. July 21, 2021). By these standards, Banco Popular cannot prevail.

## II. RELEVANT BACKGROUND

### A. The relationship between the Debtor, TDF and BANCO POPULAR[2]

The Debtor, Coco Beach Golf & Country Club, constructed and developed two 18-hole championship golf courses and full-service luxury club facilities in Río Grande, Puerto Rico as well as certain personal and other property, with the proceeds of certain bonds (the "Previous

---

[1] This court has jurisdiction to hear appeals from final judgments, orders, and decrees of bankruptcy judges. See, 28 U.S.C. § 158(a)(1). One of the challenged orders in this appeal, is an order denying reconsideration. As such, it is final if the underlying order is final and together the orders end the litigation on the merits. See, In re Rodriguez, 516 B.R. 177, 182 (B.A.P. 1st Cir. 2014)("An order denying a motion for reconsideration is final if the underlying order is final and together the orders end the litigation on the merits."). Here, the Opinion and Order dated March 27, 2020, was a final order, as it ended the litigation on the merits over the particular issue between TDF and BPPR. On April 12, 2020, BPPR moved to alter or amend the final order, which was denied on July 24, 2020. The Notice of Appeal was filed on August 6, 2021.

[2] This appeal involves the last part of an extensive and complex litigation conducted before the bankruptcy court as part of the Chapter 11 petition filed by Debtor Coco Beach Golf & Country Club SE in 2015. The financial background leading to the filing of the Chapter 11 Petition was accurately described by the bankruptcy court as "unusual, mainly due to the granting of loans by government related entities in amounts that appear to far exceed the value of the collateral given." See, Docket No. 461 in Bankruptcy Case No. 15-5312(ESL) at p. 4. Mindful of that, the court will only include in this Section the factual and procedural background in the bankruptcy case needed to put this Memorandum and Order in context.

Case 3:20-cv-01410-PAD   Document 30   Filed 09/30/21   Page 3 of 15

Banco Popular de Puerto Rico v. Puerto Rico Tourism Development Fund
Civil No. 20-1410 (PAD)
Memorandum and Order
Page 3

Bonds") issued by AFICA[3] and secured by an irrevocable stand-by letter of credit issued by TDF.[4] The proceeds of the Previous Bonds were lent by AFICA to the Debtor pursuant to a loan agreement where the Debtor agreed to repay.[5]

On March 30, 2011, AFICA issued its Tourism Revenue Refunding Bonds, 2011Series A (Trump International Golf Club Puerto Rico Project) (the "Bonds") to refund the Previous Bonds. Similar to the Previous Bonds, the Bonds are payable from payments made by the Debtor under a certain Loan Agreement between AFICA and the Debtor, and secured by, among other things, an irrevocable stand-by letter of credit issued by TDF pursuant to the terms of a Letter of Credit and Reimbursement Agreement between TDF and the Debtor. The Reimbursement Agreement requires the Debtor to, among other obligations, reimburse TDF for any amounts disbursed to Banco Popular, as trustee for the benefit of the AFICA Bonds (the "Trustee"), under the Letter of Credit.

To secure its obligations to TDF under the Reimbursement Agreement and to the Trustee under the Loan Agreement, the Debtor granted TDF a first priority lien and security interest over substantially all of its real and personal assets, through, among other things: (i) a pledge of mortgage notes (the "Mortgage Notes"), in an amount not less than the principal amount of the

---

[3] AFICA was established in 1977 as a public corporation affiliated to the Government Development Bank of Puerto Rico ("GDB") to provide access to tax-exempt financing for economic development projects in a wide range of industrial, tourism, commercial, medical, and educational related areas. The primary investors for AFICA Bonds issued in Puerto Rico include individuals, local mutual funds, local corporations, and financial institutions. See, Docket No. 272, p. 1, n.2 of Bankruptcy Case No. 15-5312 (ESL).

[4] TDF is a subsidiary of GDB. Its main function is to promote the hotel and tourism industry by making capital investments in, or by providing financing directly or indirectly (through the use of letters of credit and guarantees) to entities that can contribute to the development of this industry. See, Docket No. 272, p. 1, n.1 of Bankruptcy Case No. 15-5312 (ESL).

[5] For a Description and Location of the Property subject to the Chapter 11 Petition, see, Docket No. 1 of Bankruptcy Case No. 15-5312 (ESL).

Case 3:20-cv-01410-PAD   Document 30   Filed 09/30/21   Page 4 of 15

Banco Popular de Puerto Rico v. Puerto Rico Tourism Development Fund
Civil No. 20-1410 (PAD)
Memorandum and Order
Page 4

Bonds, pursuant to the terms of a Collateral Pledge and Security Agreement (Golf Course) (the "Pledge Agreement"), which Mortgage Notes are secured by a first priority mortgage lien on the real estate portion of the Sale Assets (the "Mortgage"); and (ii) a first priority security interest on, among other things, the personal property portion of the Sales Assets through a Master Security Agreement. The Pledge Agreement sets forth the relative rights and priorities of TDF and the Trustee with respect to the Mortgage and the Mortgage Notes and the proceeds thereof.[6]

### B. The Chapter 11 Litigation – Relevant Procedural Background

On July 13, 2015, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Because the Debtor defaulted on its obligation under the Loan Agreement of making payments of principal and interest on the Bonds, TDF filed a secured claim in the amount of $32,667,159.34 (Proof of Claim No. 22). In turn, Banco Popular filed a secured claim in the amount of $17,858.14 (Proof of Claim No. 26).

Following the filing of the Chapter 11 petition, and after several procedural events, on October 20, 2015, the Debtor filed an emergency motion for secured post-petition financing to obtain funds to pay for electricity to the Puerto Rico Electric Power Authority and give proper maintenance to its main asset: the two 18-hole golf courses and country club facilities in Río Grande, to obtain a better sales value (Appellant's Record on Appeal "App." at pp. 46-57).[7] On October 29, 2015, the bankruptcy court held a hearing to discuss the motion and the oppositions

---

[6] For a detailed explanation of the credit relationship between TDF, Banco Popular and the Debtor, refer to Proof of Claim No. 22 and Proof of Claim No. 26.

[7] As explained in the Minutes of Proceedings (App. 66), attorney for OHorizons – the entity that was going to finance the proposed post-petition financing – the monies were "very much needed" because the golf course had to comply with certain standards to be approved for the PGA tour event which was going to take place in P.R, and the facilities were running on an emergency generator that ran out of diesel since the electric power had been cut off (App. at p. 66).

Case 3:20-cv-01410-PAD   Document 30   Filed 09/30/21   Page 5 of 15

Banco Popular de Puerto Rico v. Puerto Rico Tourism Development Fund
Civil No. 20-1410 (PAD)
Memorandum and Order
Page 5

filed by several creditors (including TDF, Banco Popular and the Trump Group) (App. 65-68). Among other things, the bankruptcy court noted that TDF was an undersecured creditor and that any financing would be at the expense of the party holding the lien over the property, namely TDF. In light of the opposition raised by several creditors, the Debtor withdrew the request for post-petition financing. Id. In the end, the property was not given maintenance, and was sold for an aggregated amount of $2.2 Million, with the sale approved on November 20, 2015, that is, prior to the confirmation of the plan (App. 69-86). The funds were deposited with the Clerk of Bankruptcy Court for further distribution to allowed creditors. See, Debtor's Motion at Docket No. 172 of Bankruptcy Case No. 15-5312 (ESL) and administrative remark so stating on December 2, 2015.[8] On December 29, 2015, TDF disbursed $1,126,147.52 on the Debtor's behalf to AFICA bondholders in response to a Debt Service Reserve Fund Deficiency Drawing made by Banco Popular on behalf of the AFICA bondholders. See, Docket Nos. 272 and 326 of Bankruptcy Case No. 15-5312 (ESL).[9]

    1. **The Administrative Expenses**

The bankruptcy court set the claims bar date for July 14, 2016, warning that "creditors and other parties in interest shall file Administrative Claims and/or applications for professional compensation until July 14, 2016." See, Order at Docket No. 259 of Bankruptcy Case No. 15-5312

---

[8] Given the complex nature of the underlying Chapter 11 Petition, while evaluating the appeal, the court carefully reviewed and examined the entire docket of the bankruptcy court (including the Proof of Claims filed in connection therewith) and listened to the recordings of the relevant hearings held before Judge Lamoutte in Bankruptcy No. 15-5312 (ESL).

[9] The parties do not see eye-to-eye on this matter, but, because TDF disbursed the amount during the course of the bankruptcy case, and asserted that the disbursement was made on debtor's behalf and for the benefit of the bankruptcy case, on July 14, 2016, TDF requested administrative fees in that amount.

Case 3:20-cv-01410-PAD   Document 30   Filed 09/30/21   Page 6 of 15

Banco Popular de Puerto Rico v. Puerto Rico Tourism Development Fund
Civil No. 20-1410 (PAD)
Memorandum and Order
Page 6

(ESL).[10]  On that date, Banco Popular filed a "Motion for Allowance and Payment of Administrative Expenses," asking the court to allow for the recovery of the pre and post-petition administrative expenses (including counsel fees) in exercising its functions as Trustee, in the total amount of $45,506.06 (App. 167-372).[11]  On that same date, TDF filed a "Motion for Allowance of Administraive [sic] Expense" seeking to recover $1,126,147.52 corresponding to the amount disbursed during the course of the bankruptcy case for the benefit of the estate (App. 373-377). As support, TDF referred to the terms of a Letter of Credit and Reimbursement Agreement between the Debtor and TDF, which required the Debtor to reimburse TDF for any amount disbursed to Banco Popular as trustee for the AFICA bonds. For this, TDF contended it was entitled to recover administrative expenses pursuant to 11 U.S.C. §503(b)(1), and that the post-petition disbursement was a transaction induced by the debtor-in-possession, for the benefit of the bankruptcy estate. Id.

The Debtor opposed TDF's request, stating that any disbursement must be made in accordance with the terms of the proposed Chapter 11 liquidation plan and that to such effect, $2.2 Million had been deposited with the Clerk of Court, as proceeds of the sale available for distribution (App. 378-382). On September 29, 2016, the bankruptcy court set a hearing to discuss TDF's request for administrative payment (App. 383 and Docket No. 287 of Bankruptcy Case No. 15-5312 (ESL)).

---

[10] Claims for administrative expenses have priority over, inter alia, general unsecured claims against the estate. See, 11 U.S.C. § 507(a)(2). Notably, the distribution amounts provided for Class 1 creditors (Banco Popular and TDF) (that is, $1,525,592) is similar to the administrative claim of $1,126,147.52 claimed by TDF as an administrative expense. Because of this, when opposing TDF's request for administrative fees, the Debtor noted that on practical terms "as long as the amounts being paid to [TDF], with the consent of [Banco Popular, as Trustee], remain equal or similar to that divided proposed under Class 1 of the Plan, the label of administrative or secured creditor should not post any effect on the payment of the amounts due to these group of creditors." See, Docket No. 285, at p. 3.

[11] TDF filed a qualified opposition to Banco Popular's motion for administrative expenses. See, Docket No. 333 of Bankruptcy Case No. 15-5312 (ESL).

On October 20, 2016, Banco Popular opposed TDF's request, claiming that the motion could not be granted "as filed" because, among other things, in its Proof of Claim (Claim No. 22), TDF did not include an itemized amount breakdown (App. 387-400). **Importantly, BPPR did not argue in any way that TDF's post-petition advance could not be entitled to administrative expense priority nor questioned that the disbursement was for the benefit of the estate**. The hearing to discuss TDF's request was rescheduled on two occasions but finally set for May 23, 2017.

On May 19, 2017, TDF supplemented its request for administrative expenses, submitting the breakdown and proof of post-petition disbursements which constituted necessary costs and expenses of preserving the estate pursuant to 11 U.S.C. §503(b)(1) (App. 404-412). The Debtor opposed the supplemental request claiming, among other things, that the use of part of the funds now claimed by TDF as administrative expenses, only benefitted the AFICA bonds, not the estate or any other creditor of the estate (App. 413-429). TDF replied (App. 430-440).

On May 23, 2017, the bankruptcy court held the hearing to discuss pending matters. At the hearing, the Debtor informed that it would modify the proposed distribution of the sales proceeds consigned in court and proposed a supplement to the plan of liquidation. As to Class 1 creditors (TDF and Banco Popular), the Debtor informed the proposed modified distribution, and in turn, the bankruptcy court granted the parties 14 days to state their positions with respect to the fixed amount constituting available funds, warning them that if no opposition was filed, the plan as supplemented by the proposed distribution would be confirmed. See, Docket No. 334 of Bankruptcy Case No. 15-5312 (ESL).[12] TDF had no objection to the confirmation of the Plan, as

---

[12] See, Supplement to Plan of Liquidation at Docket No. 337 of Bankruptcy Case No. 15-5312 (ESL). In sum, the Debtor proposed the following distribution of the sale proceeds deposited in court: (1) from the funds consigned with

Case 3:20-cv-01410-PAD   Document 30   Filed 09/30/21   Page 8 of 15

Banco Popular de Puerto Rico v. Puerto Rico Tourism Development Fund
Civil No. 20-1410 (PAD)
Memorandum and Order
Page 8

supplemented. See, Docket No. 342 of Bankruptcy Case No. 15-5312 (ESL). Banco Popular, however, objected to the confirmation of the Chapter 11 Liquidation Plan (Docket No. 349), and the debtor replied (Docket No. 363).

All things considered, on June 4, 2018, the bankruptcy court confirmed the Chapter 11 liquidation plan, as supplemented (App. 489 and Docket No. 376 of Bankruptcy Case No. 15-5312 (ESL)). The confirmation order is final and no appeal was taken by any party in interest. See, Docket No. 434, p. 6.[13]

As confirmed, the Chapter 11 Liquidation Plan provides:

> II. SUPPLEMENTAL INFORMATION AND AMENDMENT TO PLAN OF LIQUIDATION DATED MARCH 1, 2016.
>
> In an effort to obtain the confirmation of the Plan of Liquidation dated March 1, 2016, the Debtor hereby supplements and clarifies its Plan with the principal modifications to be implemented in furtherance of the final distribution to creditors detailed as follows.
>
> a. Debtor's Plan of Liquidation entails the final distribution of the resulting sales proceeds obtained from the sale of estate's assets. The funds readily available for distribution as these are consigned with the Clerk of the Court are $2,125,489.50, this amount confirmed as of March 22, 2017;
>
> b. From the funds consigned with the Clerk of the Court, upon confirmation of the Plan of Liquidation and no later than the effective date of the Plan, Debtor will pay $603,494 to allowed

---

the court, Debtor was going to pay $603,494 to allowed creditors under Classes 2, 3, and 3 (as defined in the Plan of Liquidation); and (2) after payment of the amounts allowed under those 3 classes, any remaining funds would be paid to Class 1 creditors (meaning TDF and Banco Popular as Trustee) upon agreement between them or by order of the Court.

[13] On June 19, 2018, the Debtor moved to withdraw funds to complete the distribution of funds consigned consistent with the confirmed plan (Docket No. 378). Out of the $2,129,058.06 consigned, it requested withdrawal of $603,994.00 to comply with the distribution allotted to allowed claimants and Class 2 and 3 creditors, as detailed in the liquidation plan. Upon distribution of those funds, the remaining $1,525,592 was going to remain consigned in favor of Class 1 claimants (TDF and Banco Popular as Trustee). The request was unopposed and granted by the bankruptcy court on July 25, 2018 (Docket No. 381).

Case 3:20-cv-01410-PAD   Document 30   Filed 09/30/21   Page 9 of 15

Banco Popular de Puerto Rico v. Puerto Rico Tourism Development Fund
Civil No. 20-1410 (PAD)
Memorandum and Order
Page 9

     creditors under Classes 2, 3 and 4 as these are defined in the Plan of Liquidation.

      i. Class 2 – Administrative Expenses will be paid $271,134. Refer to Exhibit 1 for a detail of claimants sharing in Distribution under this Class.
      ii. Class 3 – Centro de Recaudacion de Ingresos Municipales will be paid $225,000.
      iii. Class 4- Wages & Salaries entitled to Priority under 11 U.S.C. Section 507(a)(4) will be paid $107,359. Refer to Exhibit 2 for a detail of claimants sharing in Distribution under this Class.

  c. After payment of the amounts allowed under these three Classes, any remaining funds consigned with the Clerk of the Court will be paid to Class 1 creditors, meaning the PR Tourism Development Fund PRTDF and Banco Popular de Puerto Rico as Trustee of the bondholders of the Tourism Revenue Refunding Bonds, 2011 Series A of Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA"). The distributions among these two parties is to be either agreed by the creditors in this class or determined upon Order to be entered by the Honorable Court.

  d. Notwithstanding the provisions detailed in the Plan of Liquidation dated March 1, 2016, upon the hearing held and the modifications adopted to confirm the Plan, there will be no funds available to pay any creditors under Class 8 or Article III creditors regarding government unsecured claims entitled to priority pursuant to 11 U.S.C. § 507(a)(8) of the Code.

  On April 2, 2019, the bankruptcy court held a status conference/hearing (Docket No. 403). It noted that plan payments were "substantially completed." There was, however, a pending allocation of consigned funds between TDF and Banco Popular, so the bankruptcy court granted the parties 60 days to inform of the status of ongoing negotiations. Several extensions were granted but no agreement was reached (Docket Nos. 413). Thus, on December 17, 2019, the bankruptcy

Case 3:20-cv-01410-PAD   Document 30   Filed 09/30/21   Page 10 of 15

Banco Popular de Puerto Rico v. Puerto Rico Tourism Development Fund
Civil No. 20-1410 (PAD)
Memorandum and Order
Page 10

court held a status conference to follow up on the pending dispute between TDF and Banco Popular (Docket No. 426).[14]

### 2. The Opinion and Order dated March 27, 2020 ("Opinion and Order I")

On March 27, 2020, the bankruptcy court entered an Opinion and Order (Docket No. 434). As relevant, it analyzed whether TDF and Banco Popular were both entitled to be paid for the administrative expenses they claimed. Id. at p. 8. While doing so, the bankruptcy court relied and adopted the explanation of a sister court in Massachusetts in In re IDL Development, Inc., 2019 WL 5799325, *1 (Bankr.D.Mass. November 1, 2019), to determine what is an administrative expense. In this sense, it recognized that the Bankruptcy Code provides that administrative expenses include "the actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Claims for administrative expenses have priority over, inter alia, general unsecured claims against the estate. See, 11 U.S.C. § 507(a)(2).

The court further reasoned that for a claim to qualify as an administrative expense under subsection 503(b)(1), (i) it must have arisen from a transaction with the trustee or debtor in possession, and (ii) the consideration supporting the claim must have benefitted the estate in some demonstrable way. See, Docket No. 434, p. 8 (quoting In re IDL Development, Inc.)(citing Mason

---

[14] This court listened to the recording of this hearing, as part of which the bankruptcy court discussed with the parties the status of the bankruptcy proceedings, the challenges associated with a potential settlement between TDF and Banco Popular, and the steps that would follow should the parties not reach an agreement. Again, the record confirmed no mention of anything pertaining to TDF's post-petition advancement of funds from Banco Popular. After the hearing, the record reflects that on January 15, 2020, TDF sent a settlement proposal to Banco Popular and the later informed that 38% of the bondholders responded: 24% of them rejected TDF's settlement proposal and 14% accepted the same. Banco Popular notified the results in its capacity as AFICA Trustee because under the Trust Agreement, Banco Popular is not authorized to consent to or accept or adopt on behalf of any bondholder any plan of reorganization, arrangement, adjustment or composition affecting the Bonds or the rights of any holder thereof or to vote in respect of the claim of any bondholder in the bankruptcy proceeding. See, Docket No. 349 in Bankruptcy Case No. 15-5312 (ESL).

Case 3:20-cv-01410-PAD   Document 30   Filed 09/30/21   Page 11 of 15

Banco Popular de Puerto Rico v. Puerto Rico Tourism Development Fund
Civil No. 20-1410 (PAD)
Memorandum and Order
Page 11

v. Official Comm. of Unsecured Creditors (In re FBI Distribution Corp., 330 F.3d 36, 42 (1st Cir. 2003) and Woburn Assocs. v. Kahn (In re Hemingway Transp., Inc.), 954 F.2d 1, 5 (1st Cir. 1992)).

Against this background, the bankruptcy court concluded that the expenses and fees claimed by Banco Popular did not benefit the estate in any measurable way and merely rested on pre-petition contractual obligations. Thus, it denied Banco Popular's request for administrative expenses. The court, however, reached a different conclusion with respect to TDF's request for administrative fees. As to those, the bankruptcy court concluded that the funds advanced allowed the debtor to continue efforts to consummate the sale of its assets for the benefit of creditors, and, as such, benefitted the estate. Accordingly, the bankruptcy court ordered the Clerk to disburse the balance of amounts consigned to TDF Id. at p. 9.

On April 12, 2020, Banco Popular moved for reconsideration (Docket No. 436).[15] For the first time, it contended that TDF failed to establish a valid claim for administrative expenses. It argued that: (i) TDF's claim for payment of administrative expenses stemmed from pre-petition contractual obligations; (ii) TDF's post-petition disbursements did not produce any tangible benefit to the bankruptcy estate; and (iii) the post-petition disbursements were not induced by the debtor-in-possession. Id. TDF opposed (Docket No. 452). Among others, it highlighted that Banco Popular's new arguments that TDF's post-petition disbursements cannot be paid as an administrative priority claim, were brought by Banco Popular for the first time more than two years after TDF's request for administrative expenses; were waived; and cannot be a basis for reconsideration. Id. at pp. 5-6. BPPR replied (Docket No. 454), and TDF sur-replied (Docket No. 459).

---

[15] Notably, Banco Popular did not question the bankruptcy court's determination as to its own request for administrative expense but devoted all efforts in challenging the order granting TDF's request.

Case 3:20-cv-01410-PAD   Document 30   Filed 09/30/21   Page 12 of 15

Banco Popular de Puerto Rico v. Puerto Rico Tourism Development Fund
Civil No. 20-1410 (PAD)
Memorandum and Order
Page 12

### 3. The Opinion and Order on Reconsideration dated July 24, 2020 (the "Opinion and Order II")

After considering the parties' respective positions, the bankruptcy court denied Banco Popular's motion for reconsideration (Docket No. 461). First, the court highlighted that the arguments Banco Popular presented on reconsideration should have been presented before the matter was submitted after the parties failed to reach an agreement (Id. at pp. 6-7). Rule 59(e), made applicable to bankruptcy under Fed.Bankr.P. 9023, may not be used to present new arguments. Second, it clarified that the issue of which secured creditor (TDF or Banco Popular) had a priority over the funds based on their respective rankings was not presented to the court. And the funds to be distributed were to Class 1 creditors (*secured* creditors) in which TDF had first priority. Id. at p. 7.[16] Third, it acknowledged that although TDF's disbursement was based on a pre-petition agreement, those funds "were for the benefit of the estate, which allowed time for the sale of Debtor's main assets and ultimately, the confirmation of Debtor's chapter 11 plan. These events were not in controversy." Fourth, it agreed with TDF that the disbursement post-petition allowed the case to exist as a Chapter 11, while noting that conversion to Chapter 7 would have been detrimental to creditors "resulting in unavoidable delays and higher administrative expenses. The disbursement made by TDF thus provided actual benefit to the estate." Id. at p. 7. Banco Popular takes issue with that ruling.

This court has little trouble concluding that the bankruptcy court acted within the bounds of its discretion when it denied Banco Popular's request for reconsideration under Bankruptcy Rule 9023. To prevail on a request for reconsideration under Bankruptcy Rule 9023, "the moving

---

[16] The bankruptcy court noted that who gets paid and in what amount does not affect the terms of the confirmed plan.

Case 3:20-cv-01410-PAD   Document 30   Filed 09/30/21   Page 13 of 15

Banco Popular de Puerto Rico v. Puerto Rico Tourism Development Fund
Civil No. 20-1410 (PAD)
Memorandum and Order
Page 13

party must 'either clearly establish a manifest error of law or must present newly discovered evidence.'" In re Vázquez, 471 B.R. 752, 760 (B.P.A. 1st Cir. 2012)(internal citations omitted). Here, the record reveals no error of law, let alone the type of manifest error that would allow a court to grant extraordinary relief. That being so, the bankruptcy court did not abuse its discretion in denying the Motion for Reconsideration.[17]

As a second issue on appeal, Banco Popular challenges the bankruptcy court's determination that TDF's post-petition disbursement was an administrative expense entitled to priority under Section 503(b).[18] Having carefully reviewed the arguments, submissions of counsel and the record on appeal, the court finds no reason to alter the bankruptcy court's decision. Contrary to Banco Popular's contention, that a payment made post-petition is premised on pre-petition contractual obligation – by itself – is not dispositive. See generally, Laura B. Bartell, *Straddle Obligations Under Prepetition Contracts: Prepetition Claims, Postpetition Claims or Administrative Expenses?*, 25 Emory Bankr.Dev.J. 39 (2008)(explaining, that the mere fact that a prepetition contract exists is not reason enough to conclude that all contractual obligations incurred

---

[17] In an effort to sidestep arguments of waiver for failing to meet the standard for reconsideration, Banco Popular claims that – despite its lack of objection – the bankruptcy court had an independent duty to examine the request for payment of administrative fees. See, Brief at Docket No. 14, pp. 31-34. This argument is misplaced. First, contrary to Banco Popular's contention, the bankruptcy court made an independent analysis of the request for administrative fees and concluded that it satisfied Section 503(b)(1)(A) criteria. See, Opinion and Order I at pp. 8 and 9. Second, waiver also applies to arguments in opposition to the payment of administrative expenses not raised on appeal. See e.g., In re Cellular 101, Inc., 539 F.3d 1150, 1155 (9th Cir. 2008)(Permitting a case to proceed to a decision on the merits before asserting a previously available defense undermines the integrity of the judicial system, wastes judicial resources, and imposes substantial costs upon the litigants)(cited with approval in AngioDynamics, Inc. v. Biolitec AG, 823 F.3d 1, 4-5 (1st Cir. 2016)).

[18] In light of this court's conclusion with respect to the first issue on appeal, it does not need to discuss the second issue on appeal raised by Banco Popular. The reason is simple: as the bankruptcy court correctly concluded, bankruptcy courts have validly rejected arguments in opposition to requests for administrative expenses raised for the first time on reconsideration because legal arguments in support of, or in objection to, requests for payment of administrative expenses raised for the first time in reconsideration are deemed waived (Docket No. 20, p. 24)(collecting cases). However, for the reasons explained herein, the facts before the bankruptcy court supported the conclusion that TDF's post-petition disbursement was an administrative expense entitled to priority under Section 503(b).

Case 3:20-cv-01410-PAD   Document 30   Filed 09/30/21   Page 14 of 15

Banco Popular de Puerto Rico v. Puerto Rico Tourism Development Fund
Civil No. 20-1410 (PAD)
Memorandum and Order
Page 14

by the debtor are also prepetition in nature); In re Boston Regional Medical Center, Inc., 291 F.3d 111, 126 (1st Cir. 2002)(payments made post-petition, even when premised on pre-petition contractual obligations, may be subject to administrative expense priority). And the uncontested record before the bankruptcy court confirmed that Debtor defaulted in its post-petition obligations to pay the AFICA Bondholders. Therefore, on December 29, 2015, TDF made the disbursement at issue on behalf of the debtor in response to a Debt Service Reserve Fund Deficiency Drawing made by Banco Popular on behalf of the AFICA bondholders (Docket No. 326, Exh. A). Had the Debtor not defaulted on its obligation to the AFICA bondholders, TDF would not have made the disbursement and the debtor would have been liable for that amount. Against this backdrop, and based on the "uncontested facts and allegations" at the time, the bankruptcy court concluded the transaction was induced by the Debtor and during the course of the bankruptcy proceeding (Docket No. 461, p. 7). As to the alleged lack of benefit to the estate, nothing in Banco Popular's arguments contradicts the bankruptcy court's conclusion that the disbursement post-petition allowed the case to exist as a Chapter 11, while noting that conversion to Chapter 7 would have been detrimental to creditors, "resulting in unavoidable delays and higher administrative expenses." Id. This court is unwilling to set aside the bankruptcy court's findings of fact as they were adequately supported by the record.

### III.   CONCLUSION

The bankruptcy court correctly analyzed, considered and granted TDF's request for administrative expenses. The factual determinations made in support of that conclusion were uncontested at the time the Opinion and Order was entered. And Banco Popular did not show that those factual determinations were clearly erroneous. Accordingly, the bankruptcy court's decision on this matter is AFFIRMED. Judgment shall be entered accordingly.